## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

ABHISHEK SHUKLA,
an individual,

     Plaintiff,

v.                                                                Case No.:

ORACLE AMERICA, INC., a
DELAWARE corporation.

     Defendant,

_____/

## COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

Plaintiff, Abhishek Shukla ("Plaintiff" or "Shukla"), by and through his undersigned counsel, sues Defendant, Oracle America, Inc. ("Defendant" or "Oracle") and alleges as follows:

### NATURE OF THE CASE

1. This is a civil action for compensatory damages, punitive damages, other monetary relief, equitable relief, and attorney's fees, to redress unlawful discrimination in employment on the basis of race, national origin, and/or color, in violation of (a) Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e-2 ("Title VII"); and (b) the Florida Civil Rights Act, sections 760.01-760.10, Florida Statutes ("FCRA"). As more particularly

1

alleged herein, Plaintiff is entitled to the remedies prescribed by the FCRA, Title VII, and the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. [1]

## JURISDICTION

2. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, in that Plaintiff sues Defendant pursuant to a federal statute, 42 U.S.C. § 2000 e-2. The Court has supplemental jurisdiction over Plaintiff's state law (FCRA) claim, pursuant to 28 U.S.C. § 1367, as that claim is so related to a claim in the action within the Court's original jurisdiction (i.e., the Title VII claim), that it forms part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant maintains its principal headquarters, and/or the acts and omissions giving rise to this action occurred, within the Middle District of Florida, specifically Orange County, Florida.

## THE PARTIES

4. Plaintiff, Abhishek Shukla, ("Plaintiff" or "Shukla") is, and at all times material, was, a citizen of the State of Florida and resident of Orlando,

---

[1] See 42 U.S.C.A. § 1981a (b)(2): "Exclusions from compensatory damages Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."

Florida. Mr. Shukla has an extensive background in Internet Technology ("IT"), having worked in the IT industry for more than 22 years. Throughout his successful career, he has contributed significantly to major US healthcare organizations and held a senior leadership position at a prestigious Fortune 500 company.

5.  Plaintiff is a brown, Asian man who was born in India and therefore is in several categories protected by Title VII and the FCRA.

6.  Defendant, Oracle America, Inc. ("Defendant" and/or the "Oracle"), is located at 7453 TG Lee Boulevard, Orlando, FL 32822.

## CONDITIONS PRECEDENT

7.  Fla. Stat. Ann. § 760.11 (4) provides, in pertinent part: "If the commission [Florida Commission on Human Relations, a/k/a the FCHR] determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992 [FCRA], the aggrieved person may…(a) Bring a civil action against the person named in the complaint in any court of competent jurisdiction…" Fla. Stat. § 760.11 (8), in turn, provides: "If the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days after the filing of the complaint: (a) An aggrieved person

3

may proceed under subsection (4) as if the commission determined that there was reasonable cause…"

8. On or about December 12, 2024, Plaintiff dual-filed a charge of race, color, and national origin discrimination as well as retaliation in violation of the FCRA and Title VII with the commission (FCHR) and the Equal Employment Opportunity Commission (EEOC).

9. The commission failed to determine whether there is reasonable cause on Plaintiff's complaint within 180 days after the filing of said complaint, and therefore, Plaintiff is entitled to proceed with the within civil action as if there had been a determination of reasonable cause.

10. All other conditions precedent to the maintenance of this action have occurred and/or been met, or such conditions have been waived or excused.

## ALLEGATIONS COMMON TO ALL COUNTS

11. On June 28, 2021, Mr. Shukla was hired by Oracle for the role of Senior Director – Business Value Lead in Oracle's Strategic Client Group ("SCG"). Mr. Shukla brought his tremendous industry knowledge and experience to his position with Oracle, where he quickly became an invaluable asset to the team.

12. From the time he was hired in 2021 until August of 2022, Mr. Shukla reported directly to Hiring Manager Vandana Heda. In June of 2022, at the

end of his first year with Oracle, Ms. Heda gave Mr. Shukla a positive performance rating and his base salary was increased by Oracle, in recognition of his contributions.

13. In August of 2022, Mr. Shukla began reporting to a new direct manager, Jack Hersey. In June of 2023, Mr. Shukla completed the end of his second year of employment with Oracle, and was again given a positive performance rating, this time by Mr. Hersey.

14. With Mr. Hersey's support Oracle offered Mr. Shukla a new position as Healthcare Industry Expert in the Strategic Initiatives Group ("SIG") when the SCG group was dissolved.

15. Mr. Shukla was one of only 14 out of more than 400 people who was not laid off during the dissolution of the SCG.

16. In his new role as Healthcare Industry Expert, Mr. Shukla worked with a team of 14 individuals located throughout the United States and Europe. As part of the transition to SIG, Mr. Shukla began reporting directly to Jonathan Tikochinsky, the EVP of SIG, who is based out of London. Notably, this was the first time Mr. Shukla started to have direct interactions with Mr. Tikochinsky.

17. Mr. Shukla was subjected to a hostile work environment. Specifically, from the beginning of his reporting to Mr. Tikochinsky, Mr. Shukla noticed Mr.

Tikochinsky's hostile behavior towards him. While Mr. Tikochinsky was polite with the other 13 members of the team, he was often aggressive and rude towards Mr. Shukla. In an effort to bridge the gap, Mr. Shukla set up regular one-on-one meetings with Mr. Tikochinsky to try and understand his perspective and address the hostile behavior.

18. From August to November 2023, Mr. Tikochinsky's hostility and discriminatory behavior towards Mr. Shukla intensified. Mr. Tikochinsky became overly critical, obstinate, and questioned every detail of Mr. Shukla's work and communications. More concerningly, Mr. Tikochinsky began to make racially motivated comments regarding India and people of Indian descent during team meetings.

19. On one occasion, he said, "[w]ow, you Indians have too many people already. 1.4 billion Indians on the planet." On another occasion, he remarked, "[t]here should be at least a million more Abhishek Shuklas in India."

20. These comments were especially offensive given the context of the historical relationship between India and the UK. India was a British colony from 1858 to 1947, during which time the British Empire exploited India's resources and subjected its people to discriminatory and oppressive policies. The period of colonization left a lasting impact on India's socio-economic fabric

and contributed to a legacy of racism and discrimination towards Indians. Mr. Tikochinsky's racially charged comments and behavior towards Mr. Shukla, a person of Indian descent, are reflective of this historical prejudice and are utterly unacceptable in a modern, diverse workplace.

21. The discriminatory comments and harassment were not just limited to team meetings. During one-on-one meetings, Mr. Tikochinsky constantly made racially and national origin-focused comments and criticized the way Mr. Shukla communicated on the job. Mr. Tikochinsky stated that Mr. Shukla "primarily think[s] in [his] native language" and was "unable to translate [his] thoughts to English." He told Mr. Shukla he should try to talk like the "others" on the team, who were mostly Caucasians.

22. This ongoing harassment and discrimination came to a head on December 7, 2023, when Mr. Tikochinsky gave Mr. Shukla a negative performance evaluation. Notably, this was the first poor performance review Mr. Shukla had ever received in his 2.5 years with the company.

23. On January 19, 2024, Mr. Tikochinsky sent an email to follow up on the December review. Mr. Tikochinsky accused Mr. Shukla of "a lack of clarity in both thinking and articulation in your work." In his email, Mr. Tikochinsky threatened further disciplinary action and possible termination if Mr. Shukla failed to "demonstrate immediate and ongoing

improvements." This feedback, along with the December performance review, was racially biased, racially motivated, incredibly vague and arbitrary and was a pretext for discrimination.

24. Despite the ongoing discrimination and harassment Mr. Shukla doubled down on his efforts to improve the situation. From January to April of 2024, he worked 14-15 hours per day, including weekends, and generated as much as 80% of the team's output during this time.

25. On March 22, 2024, the Company solicited Mr. Shukla's feedback in the form of the annual employee pulse survey known as the "Your Voice Survey." At that time, Mr. Shukla provided his honest feedback and complaints, including the fact that he did not feel appreciated for all of his hard work.

26. On April 8, 2024, Oracle retaliated against Mr. Shukla for his feedback on the survey and terminated his employment.

27. During the termination meeting, Mr. Tikochinsky gave a pretextual reason for termination, stating that Mr. Shukla's skills did not fit the needs of the current role. This was pretextual because Mr. Shukla was the only member of the 14-person team with Healthcare Technology experience, which was vital to the SIG. In fact, other employees on the SIG team called Mr. Shukla after the fact to express their shock that the Company had terminated such an integral person on the team.

28. As a result of Plaintiff's termination, Plaintiff suffered significant losses in equity compensation as a result of the premature termination of his employment.

29. In 2024, Plaintiff was scheduled to receive approximately 1,800 restricted stock units between July and September 2024. Because Plaintiff's employment was terminated in April 2024, he was deprived of the opportunity to receive and vest in those shares.

30. Since 2024, Plaintiff has lost an estimated 6,277 restricted stock units. He was deprived of the opportunity to receive and vest in those shares.

31. At the time of termination, Plaintiff's anticipated base salary loss was approximately $130,000, and the value of the lost RSUs was substantial and subject to market fluctuation, with Oracle's stock price reaching as high as approximately $346 per share. As a result, Plaintiff has incurred substantial economic damages, the full extent of which will be proven at trial.

### COUNT I
### DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF RACE IN VIOLATION OF TITLE VII

32. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 31, inclusive, as though fully set forth herein.

33. Title VII of the Civil Rights Act (42 U.S.C. § 2000e–2) makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge

any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

34. Defendant intentionally and unlawfully: (a) making racially-charged comments at Plaintiff; (b) discharging him from employment; (c) discriminating against him with respect to employment opportunities; and (d) adversely affecting his status as an employee, because of his race and/or color, engaged in an unlawful employment practice(s).

35. At all times material, Plaintiff, Abhishek Shukla (1) was a member of a protected group or class, in that he is Asian; (2) was qualified for the position of Senior Director at Oracle; (3) suffered adverse employment action; and (4) was treated differently from his White/Caucasian coworkers, thereby giving rise to a presumption  that the Defendant unlawfully discriminated against Plaintiff.

36. Defendant did not have a legitimate non-discriminatory reason(s) for the termination of Plaintiff.

37. Any reason(s) Defendant may purport to proffer, if any, for the subject employment decision it made with respect to Plaintiff would be a pretext for unlawful race discrimination, as it is more likely that the adverse

employment action was motivated by a racially discriminatory reason, and/or that the proffered reason is not the true reason for the employment decision.

38. As a direct, foreseeable and proximate result of Defendant's violation of Title VII, Plaintiff has suffered and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

39. Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE,** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

1. Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

2. Back pay;

3. Reasonable Attorney's fees;

4. Costs and expenses of suit; and

5. Such other and/or further relief that the Court may deem proper and just.

## COUNT II
### DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII

40. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 31, inclusive, as though fully set forth herein.

41. Title VII of the Civil Rights Act (42 U.S.C. § 2000e–2) makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42. Defendant in intentionally and unlawfully: (a) making disparaging comments at Plaintiff regarding his Indian nationality; (b) discharging him from employment; (c) discriminating against him with respect to employment opportunities; and (d) adversely affecting his status as an employee, because of his national origin, engaged in an unlawful employment practice(s).

43. At all times material, Plaintiff, Abhishek Shukla (1) was a member of a protected group or class, in that he is Indian; (2) was qualified for the position of Senior Director at Oracle America, Inc.; (3) suffered adverse employment action; and (4) was treated differently from his

White/Caucasian coworkers, thereby giving rise to a presumption that the Defendant unlawfully discriminated against Plaintiff.

44. Defendant did not have a legitimate non-discriminatory reason(s) for the termination of Plaintiff.

45. Any reason(s) Defendant may purport to proffer, if any, for the subject employment decision it made with respect to Plaintiff would be a pretext for unlawful national origin discrimination, as it is more likely that the adverse employment action was motivated by a discriminatory reason on basis of national origin, and/or that the proffered reason is not the true reason for the employment decision.

46. As a direct, foreseeable and proximate result of Defendant's violation of Title VII, Plaintiff has suffered, and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

47. Plaintiff has retained the legal services and representation of the undersigned, and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE,** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

1. Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

2. Back pay;

3. Reasonable Attorney's fees;

4. Costs and expenses of suit; and

5. Such other and/or further relief that the Court may deem proper and just.

### COUNT III
### DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF RACE, IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FCRA)

48. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 31 as though fully set forth herein.

49. Fla. Stat. Ann. § 760.01 provides, in pertinent part: "(1) Sections 760.01-760.11 and 509.092 shall be cited as the 'Florida Civil Rights Act of 1992.' (2) The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color…national origin...and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state. (3) The Florida Civil Rights Act of

1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."

50. Fla. Stat. § 760.07 provides, in pertinent part: "Any violation of any Florida statute that makes unlawful discrimination because of race [and/or] color in the area[] of…employment…gives rise to a cause of action for all relief and damages described in s. 760.11(5), unless greater damages are expressly provided for."

51. Fla. Stat. Ann. § 760.11 (5) further provides, in pertinent part: "The judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs…"

52. Consistent with the analytical framework used to determine whether a Title VII, Plaintiff is entitled to punitive damages, Plaintiff is entitled to recover punitive damages under his FCRA claim, in that: (1) Defendant acted with knowledge that its actions may have violated federal and/or state law, or in the face of a perceived risk that its actions would violate federal and/or state law; (2) liability may be imputed to Defendant as the employees of Defendant involved in the unlawful action were acting

15

within the scope of their employment at all times material; and (3) the Defendant did not engage in good faith efforts to comply with Title VII.

53. As a direct, foreseeable and proximate result of Defendant's violation of The Florida Civil Rights Act (FCRA), Plaintiff has suffered, and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

54. Plaintiff has retained the legal services and representation of the undersigned, and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE,** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

1. Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

2. Back pay;

3. Punitive Damages;

4. Reasonable Attorney's fees;

5. Costs and expenses of suit; and

6. Such other and/or further relief that the Court may deem proper and just.

## COUNT IV
### DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FCRA)

55. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 31 as though fully set forth herein.

56. Fla. Stat. Ann. § 760.01 provides, in pertinent part: "(1) Sections 760.01-760.11 and 509.092 shall be cited as the 'Florida Civil Rights Act of 1992.' (2) The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color…national origin...and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state. (3) The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."

57. Fla. Stat. § 760.07 provides, in pertinent part: "Any violation of any Florida statute that makes unlawful discrimination because of race, color...national origin... in the area of…employment…gives rise to a cause of action for all

17

relief and damages described in s. 760.11(5), unless greater damages are expressly provided for."

58. Fla. Stat. Ann. § 760.11 (5) provides, in pertinent part: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."

59. Fla. Stat. Ann. § 760.11 (5) further provides, in pertinent part: "The judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs…"

60. Consistent with the analytical framework used to determine whether a Title VII, Plaintiff is entitled to punitive damages, Plaintiff is entitled to recover punitive damages under his FCRA claim, in that: (1) Defendant acted with knowledge that its actions may have violated federal and/or state law, or in the face of a perceived risk that its actions would violate federal and/or state law; (2) liability may be imputed to Defendant as the employees of Defendant involved in the unlawful action were acting within the scope of

18

their employment at all times material; and (3) the Defendant did not engage in good faith efforts to comply with Title VII.

61. As a direct, foreseeable and proximate result of Defendant's violation of The Florida Civil Rights Act (FCRA), Plaintiff has suffered and continues to suffer and is therefore entitled to compensatory damages to redress such harm.

62. Plaintiff has retained the legal services and representation of the undersigned and will incur reasonable attorney's fees in connection with such services and representation.

**WHEREFORE,** Plaintiff demands a trial by jury on all issues so triable and prays for the following relief:

1. Compensatory damages, according to proof, to compensate Plaintiff for present and future economic, emotional, psychological, reputational, and other harm he has suffered and will suffer in the future;

2. Back pay;

3. Punitive damages;

4. Reasonable Attorney's fees;

5. Costs and expenses of suit; and

6. Such other and/or further relief that the Court may deem proper and just.

## COUNT V
## RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT (FCRA)

63. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 31, inclusive, as though fully set forth herein.

64. Fla. Stat. § 760.10(7) makes it an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice made unlawful by the Florida Civil Rights Act, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the FCRA.

65. Plaintiff engaged in statutorily protected activity when he complained about discrimination and unfair treatment, including but not limited to his complaints submitted through Oracle's "Your Voice Survey" on or about March 22, 2024.

66. Plaintiff had a good faith, objectively reasonable belief that Defendant's conduct constituted unlawful discrimination based on race and national origin.

67. Defendant was aware of Plaintiff's protected activity.

68. Shortly after Plaintiff engaged in protected activity, Defendant subjected him to an adverse employment action, including termination of his employment on April 8, 2024.

69. The temporal proximity between Plaintiff's protected activity and his termination, along with the surrounding circumstances, establishes a causal connection between the protected activity and the adverse action.

70. Defendant's stated reasons for Plaintiff's termination were false and pretextual, and the real reason for the adverse action was retaliation for Plaintiff's protected activity.

71. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages, lost benefits, emotional distress, and other compensatory damages.

72. Defendant acted with malice or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages under the FCRA.

73. Plaintiff has retained the undersigned counsel and is obligated to pay reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff demands trial by jury on all issues so triable and requests judgment against Defendant for:

1. Compensatory damages;

2. Back pay;

3. Punitive damages;

4. Reasonable attorney's fees;

5. Costs of suit; and

6. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Dated this 29th day of April, 2026.

Respectfully submitted,

SPIRE LAW, PLLC
2572 W. State Road 426, Suite 2088
Oviedo, Florida 32765

By: */s/ Jesse I. Unruh*
Jesse I. Unruh, Esq.
Florida Bar No. 93121
Monica Monsalve-Burr
Florida Bar No. 1031295
jesse@spirelawfirm.com
monica@spirelawfirm.com
margarita@spirelawfirm.com
filings@spirelawfirm.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2026., the foregoing was electronically filed through the CM/ECF system, which will send a notice of electronic filing to:

*/s/ Jesse Unruh*
Attorney

22